NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0392n.06

No(s) 09-1078, 09-2241

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jun 10, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **SHOMARIE L. THURMOND,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| **WAYNE, COUNTY OF, *et al.*,** | ) | **O P I N I O N** |
| | ) | |
| *Defendants-Appellees.* | ) | |

BEFORE:     BOGGS, COLE, and CLAY, Circuit Judges.

**COLE, Circuit Judge.** Plaintiff-Appellant Shomarie L. Thurmond was arrested and held for thirty-five days on charges of fleeing and eluding arrest. This was in error because it was, in fact, Thurmond's cousin who had committed the crime and given Thurmond's name to the police.

As a result of his arrest and detention, Thurmond brought this action under 42 U.S.C. §§ 1983, 1985, and 1986, and state law, against Defendants-Appellees Wayne County, Wayne County Sheriff's Deputies Rodgers, Mears, and Jones, and Michigan State Troopers Bunk and Crawford. After almost a year of contentious discovery, Thurmond filed a second lawsuit concerning the same set of circumstances against Wayne County and other defendants not a part of this appeal. In these now-consolidated cases,[1] Thurmond challenges the (1) denial of his motion for

---

[1]This appeal is the consolidation of district court cases: 2:07-cv-11761 ("07 case" or "Case 07") and 2:08-cv-10309 ("08 case" or "Case 08"). Unless otherwise indicated, record citations refer to the 07 case.

default judgment; (2) grant of summary judgment for Crawford, Wayne County, Mears, Jones, and

Rodgers; (3) grant of Bunk's motion to dismiss; and (4) order awarding attorney fees of $4,080.00

imposed against his counsel, D. Rick Martin, Esq. For the reasons set forth below, we **AFFIRM** the

district court's denial of Thurmond's motion for default judgment; **AFFIRM** in part and **REVERSE**

in part the grant of summary judgment for Crawford, Wayne County, Mears, Jones, and Rodgers and

**REMAND** for further proceedings consistent with this opinion; **REVERSE** the district court's grant

of Bunk's motion to dismiss; and **VACATE** and **REMAND** the order awarding attorney fees to

Wayne County.

## I. BACKGROUND

### A.     Factual Background

On April 15, 2004, Michigan State Police ("MSP") Troopers James Bunk and Gabriel Seibt

attempted to pull over a car for speeding. The suspect fled, was eventually caught, and was taken

to the hospital by the troopers for injuries sustained during the chase. The suspect was later taken

by two different MSP troopers to the MSP Detroit Post. The suspect did not have identification on

him, but identified himself as Shomarie Latron Thurmond, and gave the date of birth, street address,

and social security number that matched information for that individual in the Secretary of State and

Law Enforcement Information Network Computer Systems.[2] Shomarie Thurmond was wanted on

an outstanding warrant from Wayne County, and therefore charges were not brought that night for

the fleeing and eluding, and instead the troopers turned the suspect over to Wayne County Sheriff

---

[2]The social security number the suspect gave differed by only one digit from Shomarie
Thurmond's social security number.

deputies pursuant to their outstanding warrant. Trooper Bunk later requested and received a warrant from Wayne County for Shomarie Thurmond for fleeing, eluding, and resisting arrest from that night. Thurmond was scheduled to appear in court for these charges on May 11, 2004, and when he failed to do so, a magistrate judge issued a bench warrant for his arrest. But the suspect who fled from the police the night of April 15, 2004 was not Shomarie Thurmond; it was his cousin, Labaron Thurmond, who had lied to the police about his identity.

On April 7, 2005, the real Shomarie Thurmond was arrested pursuant to that bench warrant. It is unclear who arrested Thurmond, but these unidentified individuals transported Thurmond to the MSP Detroit Post. During the drive to the Detroit Post, Thurmond contends that he told the officers that they were arresting the wrong person. He was then taken from the MSP Detroit Post to a Wayne County Jail holding facility by MSP Trooper Dwayne Crawford and another MSP Trooper. MSP Trooper Crawford's name appears on the intake form at the jail as the arresting officer.

Thurmond spent the night at the jail, and was arraigned by a magistrate judge the next day. He did not make any protestations of mistaken identity at his arraignment. After his arraignment, he was taken to Wayne County Jail in Detroit, Michigan by two different MSP troopers, described by Thurmond only by their race: one black and one white. In a sworn affidavit, Thurmond attested that the black trooper stayed in the car with him while the white trooper went inside the jail, and that during this time he told the black trooper that he was not the person who committed the fleeing and eluding crime and that it was his cousin. Thurmond stated that he gave the trooper his cousin's name and date of birth and that the trooper responded that he would get everything straightened out. At a state-court preliminary examination, Thurmond's counsel informed the court that Thurmond

claimed that this was a case of misidentification. The assistant Wayne County prosecutor called

MSP Trooper Bunk to testify and asked him to identify the man from the incident on the night of

April 15, 2004. Trooper Bunk specifically identified Thurmond as the man he pulled over that night.

The magistrate judge found probable cause for the counts alleged, set bond, and bound Thurmond

over for trial. Thurmond was held at Wayne County Jail until May 11, 2005, when his mother

posted bond for him. On July 26, 2005, the Wayne County Prosecutor's Office dismissed the

charges against Thurmond, explaining that the person involved in the April 2004 fleeing and eluding

incident was Thurmond's cousin, Labaron Thurmond.

### B.      Procedural History

On March 8, 2007, Thurmond filed a complaint in the Wayne County Circuit Court, which

Wayne County removed to the U.S. District Court for the Eastern District of Michigan. After almost

one year and a litany of discovery motions from both parties, Thurmond filed a motion for default

judgment against all defendants, claiming deliberate withholding of evidence and various abuses of

the discovery process. The parties continued in their discovery battle and, meanwhile, Troopers

Bunk and Crawford filed a motion to dismiss and a motion for summary judgment, respectively, and

Wayne County along with Wayne County Deputy Sheriffs Linda Rodgers, Matthew Mears, and

Linda Jones also filed a motion for summary judgment. Thurmond did not respond to the merits of

these motions, but instead recounted his allegations of discovery abuses and argued that further

discovery was necessary before granting summary judgment. The district court held oral argument

on these motions, at which time it considered Thurmond's objections to a magistrate judge's order

that purported to deny Thurmond's motion for default judgment. The district court granted Bunk's

motion to dismiss, Crawford's motion for summary judgment, and the motion for summary judgment by Wayne County, Mears, Jones, and Rodgers, and denied Thurmond's motion for default judgment. Thurmond filed a motion for reconsideration of the district court's grant of Bunk's motion to dismiss, which the district court also denied.

During this time, approximately two weeks before discovery was set to close, Thurmond informed Wayne County of his intent to file a third amended complaint, or, alternatively, a new action. Wayne County objected to the proposed amendment and asked Thurmond to seek leave of the court before filing the third amended complaint. Thurmond did not do so, and instead filed a new action, creating the second of the cases consolidated for appeal here.

As a result, Wayne County filed a motion for sanctions under Rule 11 and also a motion to dismiss the new action. Thurmond did not respond to either motion, despite the district court's order to do so. At the district court's hearing on the outstanding motions pending in the first suit, Thurmond voluntarily dismissed the second suit, whereupon the district court ordered Thurmond's counsel, Martin, to pay Wayne County's attorney fees, but specifically declined to impose further sanctions under Rule 11.

## II. ANALYSIS

### A.    Thurmond's Motion for Default Judgment

We first consider the district court's denial of Thurmond's motion for default judgment, which we review for an abuse of discretion. *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990). "Abuse of discretion means that the Appellate Court is left with a 'definite and firm conviction that the court below committed a clear error of judgment.'" *United States v.*

*Guy*, 978 F.2d 934, 939 (6th Cir. 1992) (quoting *Taylor v. U.S. Parole Comm'n*, 734 F.2d 1152,

1155 (6th Cir. 1984)).

Thurmond filed a motion for default judgment against all defendants, alleging discovery

abuses such as withholding and destruction of evidence and concealment of witnesses. Federal Rule

of Civil Procedure 37(d) & (b)(2)(A)(vi) grants district courts the authority to render "a default

judgment against the disobedient party" for discovery abuses. Entry of a default judgment against

a party "for failure to cooperate in discovery is a sanction of last resort," and may not be imposed

unless noncompliance was due to "willfulness, bad faith, or fault." *Abbe*, 916 F.2d at 1073 (internal

quotation marks and citation omitted); *see also Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372,

376 (6th Cir. 2008) (explaining that default judgment is the district court's most severe discovery

sanction). Denying Thurmond's motion for default judgment, the district court stated:

> It is clear that Plaintiff has not received all of the materials he has requested, but although Defendants have produced many of the records pertaining to Plaintiff's arrest and incarceration, Defendants have also maintained throughout this action that some of the requested materials are simply unavailable. For example, Plaintiff has repeatedly demanded that the MSP Defendants produce records confirming the identities of the officers who arrested Plaintiff on the bench warrant in 2005. Both named MSP Defendants have testified in deposition that the only existing MSP arrest record is one that relates to the arrest following the 2004 traffic case. Counsel for the MSP attests that numerous record searches have been conducted within MSP systems, and that record requests have been made of the Detroit Police, the Wayne County Sheriff's Department, and the U.S. Marshall [sic] Service, all to no avail. Plaintiff accuses Defendants of lying to the Court; Defendants submit that they simply cannot produce records they do not possess.

(Order Dismissing Case, Dist. Ct. Docket No. 87, at 6-7.)

Having reviewed the record, we are not convinced that the district court abused its discretion

when it denied Thurmond's motion for default judgment. While the district court could have

provided more detailed findings regarding each of Thurmond's allegations, we are not left with a "definite and firm conviction that the court below committed an error." *Guy*, 978 F.2d at 939. The district court considered the arguments presented to the magistrate judge and, after a lengthy hearing on these issues, found that "[d]efendants' conduct during discovery provide[d] an insufficient basis for the entry of a default judgment in [Thurmond's] favor." (Order Dismissing Case, Dist. Ct. Docket No. 87, at 7.) The district court's order explained, based on its factual findings, that any noncompliance was attributable to inability, and the district court did not abuse its discretion by declining to impose such a draconian sanction. Accordingly, we **AFFIRM** the district court's denial of Thurmond's motion for default judgment. However, because the district court's order did not consider whether lesser sanctions were appropriate, nothing in this opinion prevents Thurmond from pursuing such sanctions on remand.

###### B.      Summary Judgment for Mears, Jones, Rogers, and Wayne County

We review a district court's order granting summary judgment de novo. *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 246 (6th Cir. 2000). In reviewing the district court's decision to grant summary judgment, we view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating "the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Thurmond did not respond to the merits of the motion for summary judgment by Mears, Jones, Rodgers, and Wayne County, instead filing a document which he characterizes as a Rule 56(f) request for additional discovery.[3] Therefore, "'we must now simply determine de novo whether the defendants met their initial Rule 56 burden; i.e., whether the facts as presented by the defendants, required a determination that they were entitled to judgment as a matter of law.'" *Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000) (quoting *Guarino v. Brookfield Twp. Tr.*, 980 F.2d 399, 404, 407 (6th Cir. 1992)).

### 1. *Federal Claims Against Mears, Jones, and Rodgers*

Thurmond brought claims under 42 U.S.C. §§ 1983, 1985(3) and 1986 against Wayne County Sheriff Deputies Mears, Jones, and Rodgers ("the deputies"), and Wayne County, asserting claims of false arrest/false imprisonment and malicious prosecution. "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir.

---

[3]Effective December 1, 2010, the Federal Rules of Civil Procedure were amended, changing the language and structure of Rule 56. The provision of Rule 56 relied upon by Thurmond is now Rule 56(d). *See* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."). Because the parties refer to Rule 56(f), we continue to do so here.

2005) (citing *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979)).[4] The deputies claim that Thurmond

was arrested pursuant to a facially valid warrant in his name issued by a Highland Park District Court

magistrate judge. "Arrest warrants in the hands of a police officer, unless facially invalid, are

presumed valid," *Fettes v. Hendershot*, 375 F. App'x 528, 532 (6th Cir. 2010), and Thurmond does

not challenge the facial validity of the warrant. Given that Thurmond was held pursuant to a facially

valid warrant and a bond order issued after an arraignment and preliminary hearing, his detention,

although a deprivation of his liberty, was not necessarily a constitutional violation. *See Baker v.*

*McCollan*, 443 U.S. 137, 144 (1979).

In *Baker*, the Supreme Court found that the plaintiff's three-day detention, despite his claims

of mistaken identity, did not constitute a violation of his constitutional rights. *Id.* The Court

explained:

> [W]e do not think a sheriff executing an arrest warrant is required by the Constitution
> to investigate independently every claim of innocence, whether the claim is based on
> mistaken identity or a defense such as lack of requisite intent. Nor is the official

---

[4]Thurmond has not pointed to any evidence raising a genuine issue of material fact on even
the first element necessary to prove a malicious prosecution claim. *See Sykes v. Anderson*, 625 F.3d
294, 308 (6th Cir. 2010) ("First, the plaintiff must show that a criminal prosecution was initiated
against the plaintiff and that the defendant[s] made, influenced, or participated in the decision to
prosecute." (internal quotation marks and citation omitted)). Therefore, summary judgment for the
deputies on his § 1983 claim was proper. The deputies have pointed to evidence in the record
establishing that the extent of their involvement with Thurmond was solely as employees of the
Wayne County Jail where he was held. Thurmond claims on appeal that the deputies failed
affirmatively to refute the allegations asserted in his affidavit. But in his affidavit, and throughout
this case, Thurmond claimed that it was *Michigan State Troopers* who arrested him, and that
*Michigan State Trooper* Bunk wrongly identified him as the suspect from the night in April 2004
at his preliminary examination before the magistrate judge. Thurmond does not mention any of the
Wayne County deputies in his affidavit.

> charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.

*Id.* at 145-46. The Court assumed arguendo that "depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of liberty . . . without due process of law." *Id.* at 145 (internal quotation marks omitted). The Court declined to set a bright line rule, but was certain that the three-day detention "d[id] not and could not amount to such a deprivation." *Id.*

In *Gray v. Cuyahoga Cnty. Sheriff's Dep't*, 150 F.3d 579, 582-83 (6th Cir. 1998), we reversed and remanded a grant of summary judgment for two sheriff deputy defendants because the plaintiff presented evidence that he was detained for forty-one days and repeatedly protested his innocence, the deputies possessed a photograph from the beginning of plaintiff's detention that "bore virtually no resemblance [to the plaintiff]," and the deputies provided insufficient proof that "they conducted reasonable inquiry into the apparent discrepancy," and therefore a jury question existed as to whether defendants violated plaintiff's Fourteenth Amendment due-process rights. *Id.* This court explained that the principal question for the jury on remand would be "whether [defendants] acted with something akin to deliberate indifference in failing to ascertain that the [person] they had in custody was not the person wanted by the . . . authorities on the outstanding parole-violation warrant." *Id.* at 583.

Here, the uncontested evidence submitted by the deputies highlights the dispositive fact: Thurmond neither protested his innocence to Mears, Jones, or Rodgers at any time, nor were any of the deputies in possession of any potentially exculpatory evidence.

Deputy Mears worked in the registry section of Wayne County Jail, and his name is on Thurmond's booking paperwork. Deputy Jones worked in the bond department at the Wayne County Jail, and her name is on Thurmond's inmate report as the releasing officer. Thurmond admitted in his deposition that he did not know who either Mears or Jones were. When asked the basis for his claim that they violated his constitutional rights, Thurmond did not say that he told them he was innocent, that he *might* have told them he was innocent, or that he told anyone at any of the Wayne County facilities that he was innocent. Rather, Thurmond explained that he told the *state troopers* the night of his arrest that they had the wrong suspect and that they should have "passed all that along." (Thurmond's Dep., Jan. 8, 2008, Dist. Ct. Docket No. 75-8, at 9, 11-13.)

Deputy Rodgers worked the night shift at Wayne County Sheriff's Road Patrol, where Thurmond was held the night of his arrest before his arraignment. Thurmond remembered Rodgers, and when asked to describe his interaction with her, he responded, "[s]he asked me my date of birth, address, how old I was, and fingerprinted me. Then she asked me what I did, and I told her they got me down here for fleeing and eluding, you know, and resisting arrest, and that was it." (*Id.* at 6.) He stated he did not have any further conversations with anyone that night. (*Id.* at 7.)

Nothing in the record suggests that any of the three deputies were ever made aware of even a single claim of innocence by Thurmond, let alone repeated protestations, and Thurmond does not

point to any evidence disputing this fact. The district court's grant of summary judgment in favor

of Mears, Jones, and Rodgers was therefore proper on the § 1983 claim.

We now turn to the remaining §§ 1985 and 1986 claims against the deputies. "To state a

claim under § 1985(3), a plaintiff must allege: '(1) a conspiracy; (2) for the purpose of depriving,

either directly or indirectly, any person or class of persons of the equal protection of the laws, or of

equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby

a person is either injured in his person or property or deprived of any right or privilege of a citizen

of the United States.'" *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bhd.*

*of C & J v. Scott*, 463 U.S. 825, 828-29 (1983)). Section 1986 establishes a cause of action against

anyone "having knowledge that any of the wrongs conspired to be done [as described in § 1985]"

and "having power to prevent or aid in preventing the commission of the same, neglects or refuses

to do so." 42 U.S.C. § 1986. Dismissal of a § 1986 claim is proper if a plaintiff fails to state a cause

of action under § 1985. *Braley v. City of Pontiac*, 906 F.2d 220, 227 (6th Cir. 1990); *see also Ruiz*

*v. Hofbauer*, 325 F. App'x 427, 432 (6th Cir. 2009) ("§ 1986 liability is derivative of § 1985").

Here, Thurmond alleges that the deputies falsely imprisoned him because he is African

American, and specifically contends that they acted in furtherance of the conspiracy by failing to take

seriously his claims of mistaken identity. However, as described above, the deputies have carried

their burden in proving that Thurmond never protested his innocence to any of the deputies, and

Thurmond has not met his burden in rebuttal; that is, he has not shown any disputed material facts

relating to any of the elements necessary to prove his claim. Thus, the district court did not err in

granting summary judgment for the deputies on Thurmond's §§ 1985 and 1986 claims.

- 12 -

Because we conclude that summary judgment was proper for the deputies with respect to Thurmond's federal-law claims, we must briefly address Thurmond's claim that the district court erred by denying his Rule 56(f) request for additional discovery.[5] "This Court reviews for abuse of discretion a claim that summary judgment was prematurely entered because additional discovery was needed . . . ." *Vance ex rel. Hammons v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1996). We assume that Thurmond's response to the deputies' motion for summary judgment and attached affidavits qualify as a request for additional discovery under Rule 56(f).[6] *See Heard v. Caruso*, 351 F. App'x 1, 15 (6th Cir. 2009). But the district court did not abuse its discretion in granting summary judgment for the deputies without allowing additional discovery because Thurmond's request does not point to any additional discovery that would overcome the deficiency of Thurmond's claims with respect to these defendants. *See id.* (holding that the district court did not abuse its discretion in granting summary judgment without discovery where "'further discovery would not have changed the legal and factual deficiencies'" of the plaintiff's claims (quoting *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008))); *see also Cardinal v. Metrish*, 564 F.3d 794, 797-98 (6th Cir. 2009) (same); *Guy*, 978 F.2d at 939 (holding that the district court did not

---

[5]Thurmond claims that the district court erred by not first *ruling* on his request for additional discovery. While the district court did not specifically address Thurmond's request in its order, because the district court dismissed the case in its entirety, it impliedly denied Thurmond's request. Thus, Thurmond's claim is appropriately characterized as an argument that the district court granted summary judgment prematurely because additional discovery was necessary.

[6]Rule 56(f) states: If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order. Fed. R. Civ. P. 56(f).

abuse its discretion in granting summary judgment and failing to rule on defendant's outstanding discovery request seeking facts related to a defense defendant was precluded from asserting).

The only mention of these defendants in Thurmond's request concerned whether or not any of the *state troopers* who were aware of his claims of mistaken identity informed any of the Wayne County deputies of those allegations. Even assuming arguendo that they were informed by the state troopers, this fact alone would not give rise to § 1983 liability. *See Baker*, 443 U.S. at 145 (explaining that an officer "executing an arrest warrant is [not] required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent").

### 2. Federal Claims Against Wayne County

In order to prevail against a municipality in a § 1983 action, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom. *Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 694 (1978). However, it is well settled that "[t]here can be no *Monell* liability under § 1983 unless there is an underlying unconstitutional act." *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Because deputies Mears, Jones, and Rodgers did not violate Thurmond's constitutional rights, it necessarily follows that Wayne County cannot be liable under *Monell* and thus the grant of summary judgment is **AFFIRMED**.

### 3. State-Law Claims Against Mears, Jones, Rodgers, and Wayne County

Thurmond's complaint also alleged state-law claims. Nothing in the district court's order indicates that it adjudicated these pendant state-law claims on the merits, rather than just dismissing

them after it adjudicated Thurmond's federal-law claims. *See Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010) ("In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the values of judicial economy, convenience, fairness and comity." (internal quotation marks and citation omitted)). Therefore, since this case arrived in federal court by virtue of removal under 28 U.S.C. § 1441, we **REVERSE** the judgment of the district court on the state-law claims and **REMAND** these claims for the district court either to exercise supplemental jurisdiction over them, *see* 28 U.S.C. § 1367(c)(3), or to remand them to the originating state court, *see* 28 U.S.C. § 1447(c). *See Gamel*, 625 F.3d at 952 ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." (internal quotation marks and citation omitted)).

### C.     Summary Judgment for Crawford

In his motion for summary judgment, Crawford contended that the lack of evidence supporting Thurmond's claims entitled him to summary judgment. The district court granted Crawford's motion, stating: "Plaintiff's [sic] has failed to address the arguments of either of the MSP Defendants. *For that reason* . . . [Crawford's Motion] for Summary Judgment is GRANTED." (Order, Dist. Ct. Docket No. 87, at 8 (emphasis added).) To the extent that the district court granted Crawford's motion solely due to Thurmond's failure to respond, such treatment disregards this Court's precedent. A motion for summary judgment must not be granted simply because the nonmoving party fails to oppose the motion. *See Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). The district court must examine the motion to determine whether the movant has discharged

- 15 -

his burden of demonstrating the absence of a genuine issue of a material fact. *Id.* Even so, we may affirm the judgment of the district court on any ground supported by the record. *Bangura v. Hansen*, 434 F.3d 487, 498 n.4 (6th Cir. 2006).

A party moving for summary judgment need not produce evidence negating an opponent's claims; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. In his motion, Crawford stated that nothing in the record suggested that he "did anything more than perform a routine, low-level police function with no discretion," i.e., driving Thurmond from the Detroit Post to the Wayne County Jail facility. (Mot. Summ. J., Dist. Ct. Docket No. 74, at 7.) In effect, Crawford asks us to dismiss him from the case because there is no evidence showing that Crawford violated Thurmond's constitutional rights. The record supports Crawford's assertion that he merely transported Thurmond from the Detroit Post to the Wayne County Jail facility, and Thurmond neither contests this fact, nor advances any argument to the contrary. Albeit thin, Crawford's motion for summary judgment discharged his burden as the moving party. *See Celotex*, 477 U.S. at 325.

The same cannot be said of Thurmond's response. Thurmond's opposition to Crawford's motion, styled as a Rule 56(f) request for additional discovery, makes much of the fact that Thurmond's arresting officers have yet to be identified. Although we find this troubling to say the least, even assuming arguendo that Crawford was one of Thurmond's arresting officers—a theory Thurmond does not advance—this fact is not material to Thurmond's federal claims against Crawford for the same reasons discussed with respect to the Wayne County Deputies. *See supra*

section II.B.1. Accordingly, Thurmond's Rule 56(f) request for additional discovery does not alter our conclusion that summary judgment for Crawford was proper. *See Radich v. Goode*, 886 F.2d 1391, 1393-94 (6th Cir. 1989) (explaining that Rule 56(f) requires a party to indicate "what *material facts* it hopes to uncover" (emphasis added)); *see also Heard*, 351 F. App'x at 15.

We therefore **AFFIRM** the grant of summary judgment to Crawford on Thurmond's federal claims. However, because the district court's order is devoid of any indication that it adjudicated Thurmond's state-law claims against Crawford, we **REVERSE** the judgment of the district court on the state-law claims and **REMAND** these claims for the district court either to exercise supplemental jurisdiction over them, *see* 28 U.S.C. § 1367(c)(3), or to remand them to the originating state court, *see* 28 U.S.C. § 1447(c). *See Gamel*, 625 F.3d at 952 ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." (internal quotation marks and citation omitted)).

### D. Bunk's Motion to Dismiss

We review a district court's grant of a motion to dismiss de novo. *Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 942 (6th Cir. 2009). A plaintiff's claim survives this motion if its "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). We must treat "all well-pleaded allegations in the complaint as true," and "construe the complaint in the light most favorable to the plaintiff." *Id.* (internal citations and quotations omitted).

Dismissals of actions brought under the civil rights statutes are scrutinized with special care. *See Azar v. Conley*, 456 F.2d 1382, 1384 n.1 (6th Cir. 1972).

Trooper Bunk moved to dismiss under Rule 12(b)(6) on the basis that he was entitled to absolute immunity for his statements at Thurmond's preliminary hearing. "It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings." *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) (citing *Briscoe v. LaHue*, 460 U.S. 325, 330-31 (1983)). This immunity applies "no matter how egregious or perjurious" the testimony. *Id.* Thus, Bunk is entitled to absolute immune from liability, but *only* for his false identification of Thurmond at the preliminary hearing. *See Spurlock*, 167 F.3d at 1001-04 (absolute testimonial immunity does not expand and "cloak" with immunity "any nontestimonial or pre/post-testimonial acts"). But Thurmond makes numerous allegations in his complaint about the conduct of defendants collectively or the state troopers, and Bunk is included within both groups of individuals. Allegations which, when accepted as true, *see Zaluski*, 527 F.3d at 570, demonstrate that Thurmond has stated claims upon which relief could be granted, claims to which Bunk's witness immunity would not extend. Therefore, the wholesale dismissal of Thurmond's complaint against Trooper Bunk was in error and we **REVERSE** the district court's grant of Bunk's motion to dismiss.

E.      **Order of Attorney Fees for Wayne County**

Lastly, we address the district court's award of attorney fees for Wayne County.[7] We review an award of attorney fees for an abuse of discretion. *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001) (citing *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)).

After Thurmond's counsel, Martin, orally stipulated to dismiss the second lawsuit at the district court's hearing, the district court sanctioned Martin for his "contumacious conduct," which the district court stated to include: (1) Martin unreasonably refusing to dismiss this "unviable action;" and (2) Martin's "initial failure to respond to [defendants'] motions . . . in disregard of the Court's direct orders." (Order Dismissing Case, Case 08, Dist. Ct. Docket No. 12, at 4.) However, the district court failed to identify or otherwise reference the legal basis for its imposition of sanctions. Although 28 U.S.C. § 1927 may support the imposition of sanctions in this case,[8] the district court failed to make any reference to any legal authority under which it imposed sanctions.

---

[7]We quickly dispose of Wayne County's argument that we are without jurisdiction to review the award of sanctions against counsel. Wayne County contends that Thurmond's notice of appeal was defective as to this issue because Thurmond's counsel, the party against whom sanctions were levied, is not listed as an appealing party in the notice of appeal.

A notice of appeal "must specify the party or parties taking the appeal by naming each one in the caption or body of the notice," Fed. R. App. P. 3(c)(1)(A), but "[a]n appeal must not be dismissed for . . . failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(4). Where, as here, an attorney is the only party that is sanctioned, the omission of the attorney's name on the notice of appeal does not preclude our review. *See Dixon v. Clem*, 492 F.3d 665, 677 (6th Cir. 2007) (finding jurisdiction proper where the plaintiff appealed sanctions imposed only on his attorney, even though the attorney was not named as an appealing party); *cf. Maerki v. Wilson*, 128 F.3d 1005, 1007-08 (6th Cir. 1997) (finding lack of clear intent, where both client and attorney were sanctioned). Accordingly, although the notice of appeal named only Thurmond, the sanctions order was imposed against counsel solely, and thus counsel's intent to appeal is clear from the notice. *Dixon*, 492 F.3d at 677.

[8]28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

This omission is problematic. If, for instance, the district court awarded attorney fees against Martin under 42 U.S.C. § 1988(b)[9], this would be error because such fees may only be charged against a party, not the party's attorney. *See Smith v. Detroit Fed'n. of Teachers*, 829 F.2d 1370, 1374 n.1 (6th Cir. 1987) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761 & n.9 (1980)). Nor is a proper legal basis found in Wayne County's request for fees. Indeed, the legal authority relied upon by Wayne County in its motion concerns awards under 42 U.S.C. § 1988(b), which, as explained above, would be error if applied here. While the district court summarized Martin's conduct that it found "contumacious," it did not mention—even in passing—any potential basis for the imposition of fees. Without more, the district court has deprived us of the opportunity to meaningfully review its order.

Accordingly, we **VACATE** and **REMAND** the district court's order for attorney fees, giving the district court the opportunity to explain the legal basis for its order.

### III. CONCLUSION

In summary, we **AFFIRM** the district court's decision to deny Thurmond's motion for default judgment; **AFFIRM** in part and **REVERSE** in part the judgment entered in favor of Crawford, Wayne County, Mears, Jones and Rodgers and **REMAND** for further proceedings consistent with this opinion; **REVERSE** the district court's grant of Bunk's motion to dismiss; and **VACATE** and **REMAND** the order awarding attorney fees to Wayne County.

---

[9]"In any action or proceeding to enforce a provision of sections [1983, 1985, and 1986] of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b).